For the Appellant it is Stephanie Sculls, you are a Sheik, and for the Appellant it is Bryce Lynch, you are a Heik. Ms. Sculls you may proceed. May I please report to counsel? I would like to reserve time for rebuttal. You will be able to give five minutes. This case is one that involves two elderly people who were divorced late in their years but had a 32 year marriage. There are only three points that we are asking the court to consider on appeal as you can see. One of the main points that we are asking the court to look at is the issue with regard to a certain bank account which is a savings account. The issue with regard to the bank account is a certain savings account that the petitioner Dixie Werts failed to meet her burden of proof in the circuit court of demonstrating by clear and convincing evidence that this was non-marital property. It is our position that in the circuit court she failed to demonstrate that she had a piece of property which was her savings account which was opened in 2010. She showed no tracing, she showed no documentation whatsoever of where the monies came from that funded a very substantial savings account. At the time of the distribution of property at final judgment, which is attached as appendix to the appeal, the savings account was merely deemed a non-marital asset and awarded to Ms. Werts. It is the position of Mr. Werts, the appellant in this case, that that piece of property should have been deemed marital property and distributed between the two parties as marital. One of the second points on appeal is with regard to the residence at 803 North Jackson. There is no disagreement between the parties that 803 North Jackson Street in Clinton, Illinois is Ms. Werts' non-marital property. She acquired this property between 1974 and 1975 with her first husband. However, the issue is the fact that my client fully believes that the marital estate should have been reimbursed for the substantial contribution that was made by the marital estate to the non-marital estate, which would have placed more money into the marital estate to be distributed by the court at final distribution. Finally, there was a joint checking account that the circuit court merely awarded to Ms. Werts at the end of the final distribution, which we believe ended up creating an inequitable distribution of property. With regard to the issue of the savings account, it is our position that this is the most well spelled out, and I will probably mispronounce this and I apologize, the DDA court. That court required under the standard of review is manifest weight of evidence, and of course under that standard the court must look at whether or not something is against the manifest weight of evidence. And as your honors clearly understand, a court has ruled against the manifest estimate of evidence if the ruling is against a conclusion that is clearly evident, unreasonable, arbitrary, and not based on the evidence at hand. That's a very high burden for my client to overcome. However, the burden at the circuit court level, in our opinion, was not on Mr. Werts to prove that he had to demonstrate that the savings account was marital property. On the contrary, it was Ms. Werts' job to demonstrate by clear and convincing evidence by almost every single piece of case law, and actually by 503, that she had a piece of non-marital property in her possession. It is demonstrated that this savings account was opened in November of 2010. She provided nothing to demonstrate how she funded the account, where the monies came from. There was no tracing. Let me go back for a moment to the residence. I wanted to ask you about that. You made reference to Paul's contribution of money and effort towards the addition. What evidence, if any, was presented that he made this contribution to the non-marital residence with the intent of being reimbursed? That is the one weakness that Mr. Werts has on his side of the aisle, Your Honor. With regard to that, what he did was he made the contribution, and his testimony was that he intended to live his days out there. I don't think that he ever intended to get divorced. He was 88 years old when he was handed divorce papers. Therefore, and most people going into a marriage, I don't think do intend to get divorced. There's one line of testimony in the record where he's asked a question as to whether or not he made a gift. Again, as the record does demonstrate, it appears if the entire record is taken into context and not just the one line or three lines, technically, where there's the exchange between counsel and my client as to whether or not he intended to make a gift. I think it's clear that what Mr. Werts was indicating was he loved his wife, and he was intending to live his days out there. Well, and that's all understandable, and I don't think in dispute, but isn't there a requirement that when he did what he did, made his contribution of money and effort for the residence in which he was living, that this non-marital asset, if it's to be able to make a subsequent claim, there has to be some evidence he did so with the intent of reimbursement? I don't believe that he has to demonstrate that he made so with the intent to be reimbursed. He was acting as a good husband, and he never did anything to force her to put his name on the property. He was acting as a spouse of the act with no intention to get divorced, and he was acting in that capacity. But what I think that the better question is, or the flip side of the point is, is the behavior on the other side from his now ex-wife, wherein you can clearly see, and those are the attachments in the appellant's appendix, where you can see that there was behavior or action taken by Ms. Wirtz to, for some reason, make sure that the valuation of the house was held down starting approximately 10 years ago. It was continually being reevaluated and revalued. And there's testimony throughout the course of the case that she believed the marriage was breaking down 10 years ago. That testimony never came out from Mr. Wirtz, but it did from Ms. Wirtz. Why would that matter? Because Mr. Wirtz was apparently unawares, but Ms. Wirtz was apparently aware of the fact that there was value in the house and that the value of the house had gone up, that the equity in the home had gone up. When you add a dining room... But it's his intent which is at issue, and it's the question of reimbursement, isn't it? It is a question of reimbursement, and it's a question of reimbursement by the marital estate, not the non-marital estate. And there's no question that the marital... We're not saying his non-marital estate made a contribution. We're saying that the marital estate made the contribution because he had commingled his monies that he received from his parents into his bank account, which was a marital bank account, because he commingled everything. And both parties testified that he put $20,000 into the home, and then he put $20,000 into her non-marital home, and that's the $20,000 that he used to build the bathroom, to build the dining room. When you add a bathroom, a dining room, a concrete driveway, the other home improvements are things that... Those are upkeep on a home that I don't know that my client would argue even would add value. Those are upkeep to a home. But when you add structure, that causes a transmutation. You can't take off a bathroom, you can't take off a dining room, you can't remove a concrete driveway when you move out. So that would add value to the home, and it's going to add equity to a home. And he had no intention of taking those with him, he had no intention of leaving, but he had no intention of taking them off either. And I believe that's where the intent comes from. He didn't have any intention of leaving, but he definitely had intention of adding value, and the value was definitely added. And when you also look at the job that Ms. Wertz held, she definitely understood that there was value added to her home. I don't think there's any question that there was value added, but it seems to me from the testimony that he said his son tried to talk him out of it at the time, right? Yes. And he told his son, well I love her and I want to do this, I'm going to live with her, I'm going to have a place to live for the rest of my life. So to me, those kinds of statements indicate an intent to make a gift to her. His son was weary, the testimony did indicate that his son was weary of the fact that his name was not on the home. And that again, I can see is troublesome. And I believe it's because his name was not on the home. I don't think it was necessarily an intent for a gift to his wife as much as your name's not on the house. And I don't think Mr. Wertz in his testimony still indicated that he wasn't planning on getting divorced. And I think that's part of the problem was that was only, if you look at the date, that was in 1995. This divorce did not take place until 2015. But counsel, no, I mean every marriage seems to dissolve with its own dynamic. And at the time people get married and shortly thereafter, it's certainly exceptional anyone is thinking about getting divorced. But the statute requires us to look at what you did and how you did it and what the intents were at that point. Absolutely, and I don't disagree with that, Your Honor. But the way that Mr. Wertz went about making sure that he was trying to take care of the home, I don't believe that he was just saying, he was also looking out for himself and he was building onto the home that he thought he was going to be in. He clearly said that he was going to, the home that he was going to be living in. So I don't think that it was an outright gift. He was building onto it himself. Anything further? With regard to the marital residence, there's also the issue, other than the marital residence, again, with regard to the issue of the savings account, I think that it's clear that the court does need to consider the case law that is provided in the fact that Ms. Wertz did not provide any tracing. She didn't provide any of the necessary information that would have been required of her except for to say that she did not know where she received her funds from. In the DEA case, it would have been required for her to demonstrate and to trace that and to show something other than what she provided. In that case, the court indicated, with several bank accounts, that the petitioner in that case had to demonstrate through clear, convincing, and affirmative evidence that the wife needed to show XYZ where she received the money and how she got the money into the account and she could not do so. So those accounts were considered to be marital accounts. Therefore, it's our position that the savings account number 1429 at DeWitt Savings Bank is actually a marital account. And also, the more troublesome thing about the account at DeWitt Savings Bank, which was a savings account, over $29,000 flowed through that account, and you can see that in the evidence that was provided in the appendix, flowed through the account from the time that the dissolution was filed up until approximately February of 2015. That's a substantial amount of liquid asset, none of which Mr. Wertz had access to, and there was no explanation given to where this money came from or how it flowed. Although questions were asked, the questions were never answered as to where the money came from or how it flowed. What do you mean by the questions were asked but never answered? Do you mean at trial? They were asked at trial of Ms. Wertz, and it's actually in the transcript at one point where she received the money and how she received the monies. And I do not want to misquote the answer because there were several points where she was being asked about her bank account. At one point she did say, I don't remember where I got the money. I've always had brick money. That's just how we kept our money. You've always had what money? Brick money. What does that mean? I'm assuming due to her age, it would be a depression era ideal, but I don't know. Was it translated at trial? It was not, and she was getting very upset. We did have to take a recess at one point. These are very elderly clients, and she did get very upset. Did anybody subpoena the bank records? We tried to subpoena the bank records. Due to the length of this marriage, both myself and counsel were diligent in subpoenaing bank records. And one issue we had were the bank records only went back to a certain extent, to a certain point. And so I will say that both myself and counsel had a difficult time going back past the early 90s in the bank records. So that would not be a point where I would argue that either myself or counsel failed to try to get a hold of bank records past a certain point because we both filed subpoenas on that issue. With regard to both accounts, or all the accounts that the parties had. With regard to the final account, and that account would be the marital checking account held by Ms. Wertz. That would be her checking account ending in 124 that she held. That checking account was merely in the judgment of dissolution of marriage awarded to Ms. Wertz. We are of the opinion that this account should have been divided more evenly between the parties. Now, the argument of counsel, and there is case law, and I don't disagree with the case law, that no, you do not have to have an even division of property in a dissolution of marriage. What we have here when you look at the distribution of property in this case is that there are very few assets in this case. You have two elderly people, they're both retired. And therefore, when you have two elderly people who are both retired, unfortunately, there's very little to go around. And you have one retirement account, which is Ms. Wertz IMRF, that had to be divided, and it was divided by the court, which again, that's why there are very few things being appealed in this case. However, if the reimbursement on the marital residence, if the DeWitt Savings Bank 1429, which should have been reclassified, which should be reclassified as marital, and if the joint bank account number ending 124 were all placed back into the marital pot, so to speak, and redistributed, then it would be a more equitable distribution. Because Mr. Wertz received one gross distribution of maintenance at the very beginning during temporary relief. He received two motor vehicles with very small value, and then he received his portion of the IMRF that he receives each month. Otherwise, and then he did receive what was left of his IRA, which was approximately $2,000, and goes down obviously each month as he receives his payout on that. It's our contention that that's a very uneven distribution of property. In addition to $1,000, which was supposed to be his portion of the marital property, which is 32 years of accumulation of personal property that was left in the residence. And when one looks at that distribution, it's our argument that that's not an equitable distribution. If these three pieces of property were put back in and remanded for reconsideration, I believe that it would be a more fair distribution. Thank you, counsel. You have an opportunity to address this again in rebuttal. Thank you. Mr. Lynch. Good morning. May it please the court and counsel. Counsel. There are a few things that I would like to address with counsel's arguments before the court today. The first thing is regarding the savings account for DeWitt Savings Bank. Clear and convincing evidence can be admissions or omissions by the other party that a property is not marital or not of the marriage. The evidence that the trial court relied upon in determining that the DeWitt Savings Bank account was Dixie Wertz's non-marital property was the fact that during the discovery phase, Mr. Wertz answered interrogatories. And one of the interrogatory questions was, please identify all property of the marriage. Mr. Wertz did not identify the DeWitt Savings Bank account as property that he believed was of the marriage. That omission was clear and convincing evidence for the trial court that he did not believe that that was marital property. Did Dixie identify it in her answers as her non-marital property? That I don't recall without looking at it in front of me. He may not have even been aware of the existence of the account. Now, I could see that argument being made. If she says in her answers in interrogatories, I have this DeWitt County bank account and it's my non-marital property, and then he answers his and he doesn't claim it. Well, but then if that argument was going to be made by Mr. Wertz, that I wasn't even aware of that account, then he should have brought forth evidence of Ms. Wertz's interrogatory responses and show that she failed to introduce that. But we don't have any kind of evidence of that in the record. But you're not aware that she claimed it as her non-marital property? I'm not. Without going back into the interrogatory, the discovery responses, I just don't recall. I'm sorry. Okay. So back to the issue of the savings account and the checking account, that was properly decided by the trial court based on clear and convincing evidence. If a party is not going to identify property of the marriage, then you could just, in discovery, then you could just surprise people with arguments that something that you thought going into trial was undisputed non-marital property. Now, counsel or the other party notifies you the day of trial that, hey, we're no longer conceding or believing that this is non-marital property and you need to go out and prove that it is non-marital property through clear and convincing evidence. To me, that's not fair. Why would you prepare a portion of a trial and devote a great amount of time to something that was undisputed prior to the day of trial? So that omission by Mr. Wirtz was enough for the trial court, and that is clear and convincing evidence. Now, as to the issue of the home, Mr. Wirtz was given the opportunity to deny that that was a gift to his spouse. He did not make an affirmative denial that he considered that a gift. He said, I love my wife and that was something that I wanted to do. To me, when you're given the opportunity to deny that that was a gift and you fail to deny that that's a gift, you're admitting that that is a gift to your wife. It's pretty simple. Mr. Wirtz's response was powerful evidence for the court to determine that that was a gift and there's no need for any reimbursement to the marital estate. And this is the first time today that I've heard from the respondent that the reimbursement should be, if any, if it was determined that that was not a gift, this is the first time I've heard that that reimbursement should be to the marital estate. At trial there was no evidence really presented as to which estate contributed toward that $20,000 gift to the house. So I don't believe that the respondent has met his burden to show by retracing the funds, by showing records from bank accounts, which estate is going to be reimbursed. The other evidence that supported that this was a gift was obviously the testimony of the respondent's son. The respondent's son questioned, and you've all questioned counsel about this, why would you go ahead and contribute this amount of money to the house when your name's not on the title to the house? That is further evidence that this was a gift. I really don't have anything else to add in support of my brief. I think that I state all the issues in there and unless the court has any other questions, that's all the comments I have. I see none. Thank you counsel. Thank you. Ms. Coles, any rebuttal? Yes, Your Honor. Okay, you may proceed. Thank you, counsel. First with regard to the question that Your Honor asked about the responses in interrogatories, Ms. Wirtz did not identify the savings account as it being in existence during the initial discovery phase and even the supplemental discovery phase. It came along very late in the case and therefore there were issues there. That's one of the few accounts that came along late in the case. So was it during trial that it was disclosed? Just prior. Literally just prior it was disclosed. In all fairness, I believe that it was disclosed to counsel just prior to trial. I don't believe that it was any malfeasance on counsel's behalf. I think it was confusion on behalf of our clients and a misunderstanding of the definition of marital and non-marital. With regard to the argument made on, again, with regard to the question of the gift, in the Snow case there's the question of the gift and what's a gift and what's not a gift. And the Snow case has a very nice walkthrough of what's a gift and not a gift and non-marital and marital with regard to a home. And at first blush it appears that this case would fall into the category of being a classic Snow case and my client got what he got and he should just walk away. I would argue that my client falls into the first part of the Snow analysis and actually he should receive the reimbursement under the marital portion, which is why I made the argument that I did, in that the marital estate made a contribution, which in the Snow case it was $9,000 that was ordered to be reimbursed. We're not arguing that he should receive reimbursement for the mortgage payments that were made. He did receive it. It would be like rent. He received the enjoyment of that home for 32 years. Absolutely. We're not asking for that. And we're not asking for reimbursement on the other side of the Snow case for that's the part where the reimbursement was, that's the part where reimbursement was denied because of the mortgage payments. However, in that case where the party made the contribution specifically for the home improvements from one estate to another, that's where the reimbursement was allowed. And therefore, my client can show and Ms. Wirtz even testified exactly how my client made a contribution. Whether or not it's considered a gift, my client has said he loved his wife, if that's considered a gift because he said he loved his wife 15 years into what was a 32-year marriage, that's going to be at the discernment of the court. I believe that he was making a statement. He and his son also testified that they had disagreements while they were farming. That doesn't mean that they had financial disagreements while they were farming, but that doesn't mean he made gifts of farm money to his son either. I think they had financial disagreements because his son's looking out for his  I don't think he was getting up there in years. Therefore, we're asking the court to consider reversing and remanding with regard to the issues of the categorization of the 1429 savings account, of the allowing Ms. Wirtz to keep full possession of the checking account, and that there be an allotment for reimbursement on the home and that it be remanded with regard to the issue of reimbursement. Thank you, counsel. We'll take this matter under advisory of the research.